|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |
| 3 | RICHARD ALLEN WALKER, | Case No.: 2:13-cv-01099-APG-VCF |
| 4 | Petitioner, | **ORDER REGARDING MOTIONS TO AMEND JUDGMENT** |
| 5 | v. | |
| 6 | DWIGHT NEVEN, et al., | [ECF Nos. 114, 116] |
| 7 | Respondents | |

Pending are two motions to amend judgment: one brought by petitioner Walker under Fed. R. Civ. P. 59(e) (ECF No. 114) and one brought by the respondents under Fed. R. Civ. P. 60(a) (ECF No. 116). Walker asks me to expand the certificate of appealability (COA) to include additional issues and to reconsider my denial of one of his habeas claims. For reasons that follow, that motion will be granted in part and denied in part. The respondents' motion asks me to correct a clerical error; I will grant that.

*Walker's Rule 59(e) motion*

Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within 28 days after entry of the judgment. "A motion for reconsideration under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (emphasis added in *McDowell*)). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Id.* at 1255, n.1 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d

ed.1995)).  Even so, amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id*.

1. Expansion of the COA

In issuing the final order on the merits, I granted Walker a COA with respect to his claim that his constitutional rights were violated due to the trial court's alleged failure to remove prospective jurors who expressed an inability to impose a sentence with the possibility of parole for first degree murder.  ECF No. 112, p. 68.  Walker argues I should expand the COA to include: (1) the procedural ruling in my September 30, 2015 order (ECF No. 95) that he failed to exhaust state court remedies for Ground B of his amended petition (ECF No. 55), and (2) my denial of Ground I of his amended petition wherein he alleged his constitutional rights were violated by the State's use of peremptory challenges to strike prospective jurors on gender grounds.

a. *The COA Standard*

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

b. *The exhaustion of Ground B*

In Ground B, Walker alleged that his constitutional rights to due process, a fair trial, to present a defense, and to a reliable verdict and sentence were violated because the state trial court did not allow the admission of statements made by co-defendant David Riker. ECF No. 55,

pp. 37-54. I concluded that Walker failed to exhaust the claim because it was presented to the Supreme Court of Nevada as a state law evidentiary claim, not a federal constitutional claim. ECF No. 95 at 6. Given the choice of either abandoning the claim, dismissing his petition, or moving for stay and abeyance, Walker chose to abandon the claim while reserving the right to appeal my exhaustion determination. ECF Nos. 95/98.

In claiming he exhausted Ground B, Walker points to the headings of sections of his brief on direct appeal to the Supreme Court of Nevada. One heading stated that Walker "was denied his constitutional right to due process, a fair trial, and a reliable sentence" due to the state court's exclusion of Riker's statements. ECF No. 34, p. 27. The other heading stated that "the preclusion of all Riker statements had a substantial and injurious effect or influence in determining the jury's verdicts." *Id*. at 40.

Despite those headings, however, Walker's actual argument on direct appeal focused on claimed violations of state evidentiary law. *Id*. at 33-41. Also, the headings make only vague reference to broad constitutional principles. Thus, I stand by my decision that Walker did not fairly present Ground B to the Supreme Court of Nevada on direct appeal. *See Johnson v. Zenon*, 88 F.3d 828, 830–31 (9th Cir. 1996) (finding lack of exhaustion where petitioner "limited his arguments exclusively to state evidentiary law" despite assertions that "the admission of the prior act evidence 'infringed on his right to present a defense and receive a fair trial'").

I agree, however, that Walker arguably exhausted the claim in his state post-conviction proceeding. In his opening brief to the Supreme Court of Nevada, he argued that the exclusion of Riker's statements violated his right to present a defense and cited to precedent from the Supreme Court of the United States to support his argument. ECF No. 80-7 at 37-39. Accordingly, the COA will be expanded to include this issue.

3

c. *Ground I*

In Ground I, Walker alleged his constitutional rights were violated by the State's use of peremptory challenges to strike prospective jurors on gender grounds. Walker contends that, in denying the claim, I (1) erroneously deviated from the *Batson*[1] methodology and (2) erred by not finding that the trial court effectively blocked defense counsel from raising further gender-based objections to peremptory challenges against female venire members.

With respect to the former, Walker accuses me of supplying my own gender-neutral reasons for condoning the prosecutor's peremptory challenges rather than limiting review to the prosecutor's proffered reasons. Under *Batson*, the process for determining whether a prosecutor has used peremptory challenges in a discriminatory manner is as follows. First, defendant must make a *prima facie* showing of intentional discrimination. *Batson*, 476 U.S. at 96. Next, the State must offer a gender-neutral explanation for challenging the juror. *Id*. at 97. Then, the trial court must decide whether the defendant has established purposeful discrimination. *Id*. at 98.

At issue in this case are five peremptory challenges lodged by the prosecutor against female venire members. With respect to the first two (Guinn and Cason), I discussed the prosecutor's proffered reasons and accepted them as valid without supplying any reasons of my own. ECF No. 112, pp. 21-22. *See Batson*, 476 U.S. at 97 ("[W]e emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause."). For two others (Komorny and Kraft), defense counsel did not raise an objection to the prosecutor's challenge. My discussion of gender-neutral reasons for those challenges was not, as Walker claims, a matter of me supplying my own *post hoc* reasons to satisfy step two of the *Batson* test. Instead, as I explained, it was to show that the absence of an objection "was almost certainly due

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

4

to obvious gender-neutral reasons supporting those challenges, not the trial court's supposed proscription against further objections." ECF No. 112, p. 22. As to the fifth peremptory challenge (Laws), I concluded that, based on the circumstances present at the time, the trial court correctly determined that the defense had not satisfied step one of the *Batson* test – i.e., made a *prima facie* case of intentional discrimination. *Id.*, p. 23-24. Thus, there is no merit to Walker's claim that I misapplied the *Batson* test in denying Ground I.

As to Walker's other claimed error, I affirm my previous finding that the record does not support Walker's contention that the trial court's admonishments during *voir dire* precluded further gender-based objections to the prosecutor's peremptory challenges. Presumably, defense counsel was aware of the importance of putting objections on the record regardless of whether objections were discouraged by the trial judge's comments. *See United States v. Contreras-Contreras*, 83 F.3d 1103, 1104 (9th Cir. 1996) ("The case law is clear that a *Batson* objection must be made as soon as possible, and preferably before the jury is sworn.") (citations omitted). As noted in the final order, defense counsel raised an additional objection after being admonished at length by the trial judge. ECF No. 112, p. 22. While the trial judge expressed exasperation in response to that objection, he did not prevent counsel from raising an objection when the prosecutor removed Komorny or Kraft from the venire.

And, as explained in the final order, the gender-neutral reasons for striking each of those venire members were so glaringly apparent that defense counsel surely recognized the futility of objecting to the prosecutor's challenge on gender grounds. *Id.*, p. 23. Indeed, the record shows that the defense's willingness to cut short its questioning of Komorny amounted to a concession that the prosecutor had valid grounds for challenging her. ECF No. 18, p. 14-24. Similarly, Kraft, in addition to her work history with juvenile offenders, responded to *voir dire* questioning

with repeated references to being very nervous and to being uncertain about her ability to serve on a jury or decide upon a sentence. ECF No. 20, p. 48-61.

My resolution of the claim is not debatable among reasonable jurists, so I will not expand the COA to include Ground I.

2. <u>Reconsideration of Ground C</u>

Walker claims that, in denying Ground C, I should not have applied the deference required under AEDPA[2] for "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Walker argues that deference was not appropriate here because the Supreme Court of Nevada inadvertently overlooked the federal law nature of the claim. Accordingly, he argues for reconsideration of the denial of the claim.

In Ground C, Walker alleged the trial court violated his constitutional rights when it precluded him from introducing the testimony of a medical doctor regarding his blood alcohol level during the time of the killing and robbery for which he was convicted. According to Walker, the Supreme Court of Nevada's opinion, which relies only on state law and omits any reference to federal law, demonstrates that the state court did not adjudicate his federal law claims. As support, he cites to *Johnson v. Williams*, 568 U.S. 289 (2013), even though that case ostensibly compels the opposite result.

In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court of the United States held that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" 562 U.S. at 100. Instead, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996.

1  that the state court adjudicated the claim on the merits in the absence of any indication or state-
2  law procedural principles to the contrary." *Id*. at 99.

3  In *Williams*, the state court, in denying relief from a conviction, rejected the defendant's
4  state law claim, but was silent with respect to a fairly presented federal claim. *See Williams*, 568
5  U.S. at 296. The Supreme Court saw "no reason why the *Richter* presumption should not also
6  apply when a state-court opinion addresses some but not all of a defendant's claims." *Id*. at 298.
7  Thus, the Court held that a federal habeas court must presume that the defendant's federal claim
8  was adjudicated on the merits notwithstanding the state court's failure to expressly address the
9  claim. *Id*. at 300-01.

10  Walker advances reasons why the holding in *Williams* should not govern m adjudication
11  of Ground C. He fails to demonstrate, however, that de novo review of the claim would result in
12  a different outcome. In this regard, he notes only that, had I engaged in de novo review, I
13  "would have found that the Nevada Supreme Court failed to recognize that the precluded
14  'hearsay' evidence was the information contained in the hospital records not the testimony of Dr.
15  Pitterman regarding what he learned from Mr. Walker or any other subjective fact." ECF No.
16  114 at 19. The information in the hospital records to which Walker refers is a report of his blood
17  alcohol content subsequent to his arrest. ECF No. 55, p. 55.

18  As I explained, however, Walker's blood alcohol content subsequent to his arrest,
19  standing alone, would not be particularly probative as to his blood alcohol level at the time of the
20  murder several hours earlier. ECF No. 112 at 11-12. Thus, Walker could not show the state
21  court's evidentiary ruling violated his constitutional right to present a defense (or amounted to
22  more than harmless error) without corroborating evidence as to the timing of his alcohol
23  consumption. *Cf. Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (defendant's constitutional

7

right violated by exclusion of "competent, reliable evidence . . . central to the defendant's claim of innocence"). The only corroborating evidence Walker has proffered are hearsay statements the state court properly excluded.

Consequently, I decline to alter or amend my decision to deny Ground C. And Walker has not demonstrated that reasonable jurists would find my assessment of Ground C debatable or wrong.

*The Respondents' Rule 60(a) motion*

Under Federal Rule of Civil Procedure 60(a), the court may "correct clerical errors in its orders and judgments at any time on its own initiative or on the motion of any party." *Taylor Rental Corp. v. Mitchell*, 9 F.3d 1553 (9th Cir. 1993). The respondents point out that, on line 16 of page 24 of the final order (ECF No. 112), I mistakenly stated that, with Ground K of his petition, Walker was challenging his death sentence, when in fact Walker was sentenced to two consecutive life terms without the possibility of parole.

The respondents filed their Rule 60(a) motion after Walker filed his notice of appeal. While the district court is generally divested of jurisdiction once a notice of appeal has been filed, the district court is permitted to clarify its order, notwithstanding a pending appeal, when the correction "does not represent a change of position, but rather simply clarifies the court's intended action." *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 654-55 (9th Cir. 1991). Because I was fully aware of Walker's actual sentence and merely committed a drafting error, the respondents' motion will be granted.

IT IS THEREFORE ORDERED that Walker's motion to alter or amend judgment **(ECF No. 114) is GRANTED in part and DENIED in part**. The COA is expanded to include the following issue:

Whether this court erred in determining that petitioner failed to exhaust state court remedies for Ground B of his first amended petition for writ of habeas corpus.

In all other respects, Walker's motion and a COA as to all remaining issues are DENIED.

IT IS FURTHER ORDERED that the respondents' motion to alter or amend judgment **(ECF No. 116) is GRANTED**. Line 16 of page 24 of my final order (ECF No. 112) is hereby by amended to omit the word "death."

IT IS FURTHER ORDERED that the Clerk of Court for this court shall transmit to the Clerk of Court for the United States Court of Appeals for the Ninth Circuit a copy of this order (attention USCA Case Number 18-16240).

Dated: December 20, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE