UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICHARD ALLEN WALKER,

Petitioner,

v.

DWIGHT NEVEN, et al.,

Respondents.

Case No. 2:13-cv-01099-APG-VCF

ORDER

**I. BACKGROUND**

In June 2018, I entered a final order on the merits denying Richard Allen Walker's application for federal habeas relief. ECF No. 112. In May 2020, the United States Court of Appeals for the Ninth Circuit issued a memorandum decision affirming in part and reversing in part. ECF No. 127. That court reversed my "holding that Walker failed to exhaust his claim relating to the trial court's exclusion of his co-defendant's statements." *Id*. at 2. Having determined that Walker asserted the claim in his opening brief to the Supreme Court of Nevada in state post-conviction proceedings, the court of appeals "remand[ed] to the district court for further consideration of this claim on the merits, including whether the claim is procedurally defaulted." *Id*. at 2-3 (citing *Johnson v. Zenon*, 88 F.3d 828, 831 (9th Cir. 1996)).

The claim to which the court of appeals refers is Ground B of Walker's amended habeas petition (ECF No. 55). In Ground B, Walker alleges that his constitutional rights to due process, a fair trial, to present a defense, and to a reliable verdict and sentence were violated because the state trial court did not allow the admission of statements made by co-defendant David Riker. ECF No. 55 at 37-54.

After permitting the parties to brief the issues presented on remand, I conclude that Ground B is procedurally defaulted or, alternatively, that it fails on the merits.

## II. PROCEDURAL DEFAULT

1. Legal Standards

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the state carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the state, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

A petitioner can overcome the procedural default of a claim by showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298 (1995). To demonstrate actual innocence under *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Considering all the evidence in the case, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 327); *see also Schlup*, 513 U.S. at 329 ("a petitioner does not meet

3

the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt").

### 2. Analysis

The respondents argue that Ground B is procedurally defaulted because the Supreme Court of Nevada dismissed the claim based on an adequate and independent state rule. In his direct appeal to the Supreme Court of Nevada, Walker's challenge to the trial court's exclusion of Riker's statements was based on claimed violations of state evidentiary law. ECF No. 34 at 33-41. In his state post-conviction proceeding, however, Walker asserted federal violations in relation to the claim. ECF No. 127 at 2-3. Even so, the Supreme Court of Nevada declined to consider the substance of the federal claims:

> Next, appellant argues that the trial court erred by refusing to allow appellant to present his codefendant's statements … These issues were considered and rejected on direct appeal. *Walker v. State*, 113 Nev. 853, 944 P.2d 762 (1997). While appellant argues that this court erred in its disposition of these issues on direct appeal, the doctrine of law of the case prevents further litigation of these issues and "cannot be avoided by a more detailed and precisely focused argument." *Hall v. State*, 91 Nev. 314, 316, 535 P.2d 797, 799 (1975). Therefore, the district court did not err in denying these claims.

ECF No. 81-3 at 15-16.

Under *Hall*, "[t]he law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same." *Hall*, 535 P.2d at 798 (internal quotation and citations omitted). The Supreme Court of Nevada has applied this doctrine to dismiss habeas claims without reaching the merits. *See, e.g., Rippo v. State*, 423 P.3d 1084, 1101 (Nev. 2018); *State v. Eighth Judicial District Court ex re. County of Clark*, 112 P.3d 1070, 1075 (Nev. 2005); *State v. Haberstroh*, 69 P.3d 676, 686 (Nev .2003); *McNelton v. State*, 990 P.2d 1263, 1275 (Nev. 1999); *Hogan v. Warden, Ely State Prison*, 860 P.2d 710, 715 (1993).

Walker does not argue that the doctrine is an inadequate bar in Nevada, nor does he cite case law indicating that the Supreme Court of Nevada applied the doctrine inconsistently in noncapital cases at the time of his default. Instead, relying primarily on federal precedent, he argues that the law of the case doctrine does not apply to his claim. Under *Bennett*, Walker has failed to carry his burden of placing the defense in issue. *See Bennett*, 322 F.3d at 586. I thus hold that the Nevada law of the case doctrine constitutes an adequate state law ground to bar federal review.

Walker does argue, however, that his actual innocence excuses any procedural bar to Ground B. In deciding the respondents' motion to dismiss, I rejected Walker's actual innocence claim in Ground A of his petition. ECF No. 95 at 3-6. Walker suggests that decision is not binding in this context because it improvidently relied on the findings of the Supreme Court of Nevada and failed to factor in the excluded testimony of Dr. Pitterman, who would have testified about Walker's level of intoxication at the time of the crime. Having considered these two points, I still find that Walker has not demonstrated his actual innocence.

While I relied on the findings of the Supreme Court of Nevada in my prior actual innocence decision, my consideration of Ground A on the merits described "[a]dditional evidence beyond that cited by the Supreme Court of Nevada indicat[ing] that Walker participated in the murder." ECF No. 112 at 7-8. I noted:

> Blood found in the treads of Walker's shoes matched [the victim's] or Riker's blood type, but not his. ECF No. 28, p. 29-31. And, the bloody footprints at the scene that matched shoes associated with Walker were in addition to bloody footprints matching boots associated with Riker, which dispels Walker's claim that Riker acted alone. ECF No. 28, p. 179-204. Also, a knife was found in the TSC van with [the victim's] blood type (to the exclusion of Walker and Riker's blood types) and another was found at the murder scene (the one matching a sheath Walker was wearing), so two knives were directly connected to the murder. ECF No. 26, p. 115-116; ECF No. 28, p. 32.

*Id.* (footnotes omitted).

I also noted the problem with Dr. Pitterman's assessment of Walker's blood alcohol content at the time of the murder, that being that it assumes that Walker consumed no alcohol in the approximately four hours between the time of the murder and the time of his arrest. ECF No. 112 at 11-12 (citing ECF No. 51 at 13-15). Evidence presented at trial established that Walker and Riker stopped at a casino during that time interval. *See Walker v. State*, 944 P.2d 762, 766-67 (Nev. 1997). Due to the lack of any evidence about whether Walker consumed alcohol after the murder, Dr. Pitterman's calculations do little to establish Walker's actual innocence. Thus, I confirm my prior conclusion that Walker has not demonstrated that it is more likely than not that no reasonable juror would have convicted him in the light of the "new" evidence he cites.

Based on the foregoing, I conclude that the Supreme Court of Nevada rejected Ground B based on an independent and adequate state procedural rule and that Walker has not demonstrated that his default should be excused. Thus, Ground B is procedurally defaulted.

**III. MERITS**

Despite my conclusion that Ground B is procedurally defaulted, I also consider the merits of Ground B in the event that Nevada's application of the law of the case doctrine is later determined to be inadequate to bar federal review. Because the claim has not been adjudicated on the merits by the state court, I review the claim de novo without the deference usually accorded state courts under 28 U.S.C. § 2254(d)(1). *See Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). *See also James v. Schriro*, 659 F.3d 855, 876 (9th Cir. 2011) (noting that federal court review is de novo where a state court does not reach the merits, but instead denies relief based on a procedural bar later held inadequate to foreclose federal habeas review).

The statements by Riker that Walker claims the trial court erroneously excluded are a November 4, 1992 letter Riker wrote to Walker, sworn statements Riker made to the court at his change of plea hearing, and an unsworn statement Riker made to the three-judge panel at his sentencing hearing. ECF No. 55 at 37. As noted, Walker challenged the trial court's exclusion of these statements on direct appeal. ECF No. 34 at 33-41.

The Supreme Court of Nevada rejected Walker's arguments as follows:

> Walker argues that the district court erred in precluding him from presenting statements made by his co-defendant, Riker, at the guilt phase and at the penalty phase.
>
> In a letter to Walker dated November 4, 1992, Riker admitted to killing Marble and "the owner of the Suburban" (NOAA employee John Phippen ("Phippen")) and made several statements exculpating Walker. On August 13, 1993, at a change of plea hearing, Riker pleaded guilty to first-degree murder and robbery with the use of a deadly weapon. During the hearing, Riker admitted under oath to stabbing Marble. On February 25, 1994, at Riker's penalty hearing, he made an unsworn statement before a three-judge panel. The panel found that Riker murdered Marble, and imposed a sentence of death.
>
> On May 31, 1994, Walker filed a motion in limine requesting permission of the court to introduce the November 4, 1992 letter and to redact all references to Phippen's killing from the letter. The trial court denied the motion. Later, during the guilt phase of trial, counsel for Walker asked the trial court to reconsider this decision, and sought to admit several additional documents. The trial court ruled that the findings and sentence of the three-judge panel, the change of plea transcript, the penalty hearing statement, and the letter were all inadmissible.
>
> The decision to admit or to exclude evidence is within the sound discretion of the trial court, and this court will not overturn the trial court's determination absent manifest error. *Petrocelli v. State*, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). Evidence which is not relevant is not admissible. NRS 48.025(2).
>
> Walker argues that Riker's change of plea statement and penalty hearing statement were admissible during the guilt phase under NRS 51.075, the general exception to the rule against hearsay, because they were made under special circumstances which offer assurances of accuracy. However, the record shows that Riker made other statements implicating Walker in both the Phippen and the Marble murders. Given the inconsistencies between Riker's statements, we conclude that the district court properly decided that the change of plea and the penalty hearing statement were inadmissible.

The trial court determined that Riker's letter and penalty hearing statement were offered to exculpate Walker and thus required corroborating circumstances indicating that this evidence was trustworthy.  Circumstances indicated that this evidence was untrustworthy; therefore, the trial court excluded this evidence from the guilt phase.  Walker asserts that this ruling was in error because portions of these documents were admissible pursuant to the statement against interest exception to the rule against hearsay.

A statement against penal interest is admissible if the declarant is unavailable at the time of the trial and if the statement was against the declarant's penal interest at the time when made. NRS 51.345; *Woods v. State*, 101 Nev. 128, 132, 696 P.2d 464, 467 (1985).

If the letter were redacted to exclude statements exculpating Walker, the remaining statements against interest would have little or no probative value, because Riker's guilt does not preclude Walker's criminal liability.  Also, Riker's remorseful penalty phase statement was not against his penal interest.  Accordingly, we conclude that the trial court did not abuse its discretion in determining that portions of the letter and the penalty hearing statement were inadmissible.

Walker asserts that parts of the letter were admissible pursuant to NRS 51.105, the state of mind exception to the hearsay rule, as statements of then-future intent.  Walker has not shown the relevance of Riker's then-future intent; hence, we conclude that the trial court properly refused to admit any parts of the letter. *See Shults v. State*, 96 Nev. 742, 751, 616 P.2d 388, 394 (1980).

Walker contends that during the penalty phase, the trial court erred in determining that if the above evidence were admitted, the State would be allowed to admit all other statements made by Riker.  Walker argues that statements other than those he sought to admit did not fall within any exceptions to the rule against hearsay, and that co-defendant statements were inadmissible pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

"Questions of admissibility during the penalty phase of a capital murder trial are largely left to the discretion of the trial judge." *Lane v. State*, 110 Nev. 1156, 1166, 881 P.2d 1358, 1365 (1994), *cert. dismissed*, 514 U.S. 1058, 115 S.Ct. 1444, 131 L.Ed.2d 323 (1995). *But cf. Lord v. State*, 107 Nev. 28, 43–44, 806 P.2d 548, 557 (1991) (admitting a non-testifying co-defendant's confession during the penalty phase of a capital case generally violates the defendant's constitutional right to confrontation).

Admitting only some of Riker's statements could have misled the jury.  Also, as discussed above, the statements Walker sought to admit were of dubious veracity.  Irrespective of the admissibility of other evidence, we conclude that the trial court did not err in precluding the statements made by Riker which Walker sought to admit.

Finally, Walker argues that the preclusion of any evidence of Riker's guilt precluded Walker from arguing that Riker was the sole actor in Marble's death

8

>and that Walker was merely present at the scene. Given our conclusions above, we conclude that this argument is without merit.

*Walker*, 944 P.2d at 768–69.

The Constitution guarantees criminal defendants a "meaningful opportunity to present a complete defense," but "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) and *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Accordingly, "[o]nly rarely [has the Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Id*. (citing as examples *Holmes*, 547 U.S. at 331 (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers v. Mississippi*, 410 U.S. 284, 302–303 (1973) (State did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22 (1967) (rule could not be rationally defended)). Evidentiary rules or decisions do not violate a defendant's constitutional rights unless they "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324 (alteration in original) (internal quotation marks and citation omitted).

The Court in *Crane* concluded that the exclusion of testimony about the circumstances of the defendant's confession violated the defendant's constitutional right to present a defense because it was "competent, reliable evidence" that was "central to the defendant's claim of innocence" and the State had failed to advance "any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence." *Crane*, 476 U.S. at 690-91. Likewise, the Court in *Holmes* invalidated an evidentiary rule that excluded defense evidence about a third party's alleged guilt where there was strong evidence of the defendant's guilt, even

if the excluded evidence "would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues." *Holmes*, 547 U.S. at 329-31.

Here, Walker argues that his case closely parallels *Chambers*, another case in which the statements at issue were excluded based on the state's hearsay rules. In that case, Chambers sought to introduce the testimony of three witnesses, each of whom would have testified that a man named McDonald had confessed to committing the murder for which Chambers was being charged. *Chambers*, 410 U.S. at 298. The trial court excluded the testimony on hearsay grounds, and the state supreme court affirmed the ruling.[1] *Id.* at 293. In concluding that Chambers had been denied a trial "in accord with traditional and fundamental standards of due process," the Supreme Court stated:

> Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Id.* at 302. In finding the hearsay statements reliable, the Court noted that each of McDonald's confessions was "made spontaneously to a close acquaintance shortly after the murder had occurred," corroborated by other evidence in the case, and "in a very real sense self-incriminatory and unquestionably against interest." *Id.* at 300-01. The Court also noted that, to the extent there was any doubt as to the truthfulness of the extrajudicial statements, McDonald

---

[1] The State also refused to permit Chambers to cross-examine McDonald's testimony repudiating a prior sworn confession. *Id*. at 291-92.

was present in the courtroom and under oath, so "[h]e could have been cross-examined by the State, and his demeanor and responses weighed by the jury." *Id*.

I see scant resemblance between this case and *Chambers*. Here, unlike in *Chambers*, the excluded statements were either unreliable or did not exculpate the defendant, and the declarant was not available for cross-examination.

In the November 4, 1992, letter, Riker wrote that Walker "knew nothing about the murders" and that, during the Marble murder, Walker was "passed out in the motel." ECF No. 69-15 at 11. In denying Walker's motion to introduce a redacted copy of the letter, the trial court found "no reason to believe that this letter is correct," noting that Riker had "nothing to lose" because he intended to enter a guilty plea and that his statements in the letter conflicted with statements he had made to mental health experts identifying Walker as an active participant in the murders.[2] ECF No. 21 at 24-27. When Walker renewed his motion to admit the letter, the trial judge ruled that he would not permit the admission of Riker's "unsworn statement … with no ability to cross-examine him." ECF No. 29 at 73-77.

At his change of plea hearing, Riker admitted that he "was involved in the murder and robbery of Kevin Marble." ECF No. 60-13 at 21. In canvassing Riker, the judge asked, "Did you personally stab him?" Riker responded, "Yes, I did." *Id*. at 22. In denying Walker's request to have the transcript of the hearing admitted as evidence, the trial judge observed that Riker's admissions "d[id] not exclude anyone else," noting that the State's theory was that Marble was

---

[2] The Nevada hearsay rule with respect to statements against interest provides, in part:

> A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Nev. Rev. Stat. § 51.345(1)(d).

11

stabbed twice, once in the back and once in the front. ECF No. 29 at 93. The trial judge also cited a statement made by Riker's trial counsel at the change of plea hearing. *Id.* at 93-94. At the conclusion of the hearing, counsel stated:

> Just for the record, Your Honor, part of my concern with this is that Mr. Riker is doing it perhaps out of some desire that he be sentenced to death, whether Mr. Blaskey and I wish to see that result or not. He has previously informed us that he did not do the stabbing in this case, that it was the other person. And I think that today that he may just be speaking out in his desire to seek the death penalty and not necessarily based on the facts of the case. Previously he's informed Mr. Blaskey he did not do the stabbing, I want the Court aware of that now, that just because the State forced that admission out of him today doesn't necessarily mean that it's true. He admits his involvement in the acts; and in the murder, and in the robbery of the felony murder, but he has not previously admitted that he did the stabbing himself.

ECF No. 60-13 at 23. The trial judge suggested that it would grant Walker's request to have the transcript admitted if this portion was included. ECF No. 29 at 67-68.

In his unsworn statement at the penalty hearing, Riker stated that he would "have to live forever with the terrible deeds I have done." ECF No. 66-1 at 93. He further stated:

> I pled guilty because I am guilty. I told my attorneys that in the beginning and I've never said otherwise. But that doesn't change what I have done. Although I have committed an inexcusable act I still believe that there is hope for me.

*Id*. at 93-94. In refusing Walker's request to introduce the statement as defense evidence, the trial judge again noted his unwillingness to allow the statements without Riker being available for cross-examination, "in view of all the other conflicting motives and statements he's made." ECF No. 29 at 83-85.

In summary, the trial court's exclusion of Riker's hearsay statements was neither arbitrary nor without a rational purpose. The trial court articulated reasons for finding the statements to be either unreliable or not probative of Walker's innocence. In addition, the trial court reasonably refused to admit the statements without the State having an opportunity to

cross-examine Riker. Accordingly, I conclude that Walker was not deprived of his constitutional right to present a complete defense by the trial court's exclusion of Riker's hearsay statements.

Finally, constitutional error in excluding evidence warrants habeas relief only when such error had a substantial and injurious effect or influence on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009) (even where exclusion of evidence was constitutional error, habeas relief not warranted unless harmless error standard is satisfied). Even if such error occurred here, it did not rise to this level. The only excluded statements that indicated Riker acted alone without Walker's participation were those in the November 4, 1992, letter. As noted above, there was ample evidence presented at trial placing Walker at the scene when the murder occurred. On the other hand, there is no evidence in the record corroborating Riker's statement that Walker was "passed out in the motel."

Based on my de novo review, Ground B is without merit.

**IV.  CONCLUSION**

Walker's claim relating to the trial court's exclusion of his co-defendant's statements is procedurally defaulted. Alternatively, Walker's constitutional rights were not violated by the trial court's exclusion of the statements. Thus, I deny the claim.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). Accordingly, I have *sua sponte* evaluated whether I should issue a COA in relation to my decision to deny Ground B. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having considered my findings and conclusions above, I conclude that the *Slack* standard is not met with respect to my resolution of Ground B. Therefore, I decline to issue a COA.

I THEREFORE ORDER that Ground B of the first amended petition for writ of habeas corpus (ECF No. 55) is DENIED. The Clerk shall enter judgment accordingly.

I FURTHER ORDER that a certificate of appealability is DENIED.

Dated this 23rd day of October, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE